UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GREAT BOWERY, Inc. d/b/a TRUNK ARCHIVE,

                      Plaintiff,

      v.

ROYAL BEAUTY STUDIO INC,

                    Defendant.
-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

25-CV-3627
(Block, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Great Bowery Inc., doing business as Trunk Archive, brings this action against Defendant Royal Beauty Studio Inc.,[1] seeking damages and injunctive relief under the Copyright Act of 1976, 17 U.S.C. §§ 101-810, for Defendant's alleged unauthorized use of Mr. Florian Sommet's photograph (the "Photograph").  *See* Dkt. Nos. 1 ¶¶ 10-17; 15-3 ¶¶ 14-16; 15-4 at 2. Plaintiff is a photography licensing agency that holds the rights to the Photograph.  Dkt. Nos. 1 ¶¶ 10-11, 16; 15-2 ¶ 8; 15-3 ¶ 6.

Currently pending before this Court, on a referral from the Honorable Frederic Block, United States District Judge, is Plaintiff's motion for default judgment against Defendant.  *See* Dkt. No. 15; Referral Order dated Sep. 9, 2025.  For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's motion be granted.[2]

---

[1] On February 23, 2026, Plaintiff filed a notice of voluntary dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) as to Defendants Does 1 through 10.  Dkt. No. 21.  The caption has been updated accordingly.

[2] Gavin Hart, a judicial intern, who is a third-year law student at the Washington University School of Law, is gratefully acknowledged for his assistance in the research of this Report and Recommendation.

## I.    <u>Background</u>

### A.    **Factual Allegations**

The following facts are taken from the Complaint, Plaintiff's motion for default judgment, and the attachments filed thereto.  The facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (noting that "[i]n light of [the defendant's] default, a court is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citation omitted)).

As noted above, Plaintiff is a full-service photography licensing agency that represents photographers, artists, and designers, as well as their copyrighted work.  Dkt. Nos. 1 ¶¶ 10-11; 15-2 ¶ 8.  The author and rights-holder to Photograph is Mr. Florian Sommet.  Dkt. Nos. 1 ¶ 16; 15-3 ¶ 6.  Sommet registered the Photograph with the United States Copyright Office under Registration Number VA 2-226-660 with an effective registration date of October 20, 2020.  Dkt. Nos. 1 ¶¶ 18-19; 15-3 ¶ 8; 15-2 ¶¶ 10-11; 15-4 at 4.[3]

Sommet asserts that he created the Photograph, which depicts a "woman's lips surrounded by white flowers."  Dkt. No. 15-3 ¶ 6.  Plaintiff attaches the Photograph to the Complaint, which is copied here for reference:

---

[3] Page citations are to the ECF-stamped page numbers unless otherwise noted.



Dkt. Nos. 1-1 at 2; 15-4 at 2.  On or about January 12, 2012, Sommet entered into an Artist Agreement with Agenture Folio ID GmbH for the exclusive representation to license Sommet's photographs, which includes the exclusive right to distribute, display and reproduce the Photograph.  Dkt. No. 15-3 ¶ 10.  Plaintiff subsequently acquired Agentur Folio ID GmbH, and the Artist Agreement continued between Sommet and Plaintiff.  *Id.* ¶ 12.  Plaintiff is now the exclusive licensor of Sommet's photographs, and has the exclusive right to distribute, display, and reproduce the Photograph.  *Id.*; *see also* Dkt. No. 1 ¶ 20.  The effective date of the copyright to the Photograph is October 20, 2020, and the date of first publication is in 2016.[4]  Dkt. Nos. 1-1 at 4-11; 15-4 at 4.

Defendant Royal Beauty Studio Inc. is a beauty spa and salon that owns and operates website at the domain https://royalbeautyspanyc.com/ ("Defendant's Website").  Dkt. Nos. 1 ¶¶ 21-22; 15-2 ¶¶ 5-6.  Defendant also maintains and operates an Instagram account named

---

[4] The publication date range of Sommet's photo collection is from January 26, 2016 to December 13, 2016. Dkt. No. 15-4 at 4.  It is unclear when the Photograph was published within this date range.  As demonstrated below, it is not material when the Photograph was published within this date range, and 17 U.S.C. § 412 does not bar statutory damages or attorney's fees in this action.

"@royalbeautystudio_nyc" ("Defendant's Instagram").  Dkt. Nos. 1 ¶ 23; 15-2 ¶ 7.  Defendant's Instagram account was created in June 2022.  Dkt. Nos. 19; 19-1.

Defendant is a New York corporation with a principal place of business in Forest Hills, New York.  Dkt. No. 1 ¶ 6.  An examination of the New York State Department of State website confirms that Defendant is a "domestic business corporation" incorporated in New York state, and the address to which the New York Secretary of State would mail a copy of any process against the corporation is Harpreet Kaur, 102-35 65th Road, Forest Hills, New York 11375.  Dkt. No. 15-4 at 12; N.Y. DEP'T OF STATE, DIV. OF CORPS., ENTITY INFORMATION, https://apps.dos.ny.gov/publicInquiry/ (last visited Feb. 23, 2026) ("ENTITY NAME: ROYAL BEAUTY STUDIO INC. DOS ID: 5506109").

Plaintiff alleges that Defendant "has one or more offices and employees in New York, has conducted regular and substantial business throughout New York including this judicial district, and has transacted business with many individuals or business [*sic*] residing throughout New York including this judicial district."  Dkt. No. 1 ¶ 7.

Plaintiff alleges, "[o]n or about October 26, 2023, [Plaintiff] discovered [the Photograph] in an Instagram post published to and displayed on Defendant's Instagram as the primary photograph for three separate 'Story Highlights' ('Infringing Posts')."  Dkt. Nos. 1 ¶ 29; 15-2 ¶ 13.  Plaintiff further alleges that Defendant had also published the Infringing Posts to the Defendant's Instagram Story for 24 hours before they were saved to the Story Highlights.  Dkt. Nos. 1 ¶¶ 32-36; 15-2 ¶¶ 16-19.  Plaintiff's screenshots of Defendant's Instagram displaying the Photograph are copied below:





Dkt. Nos. 1-1 at 13-16; 15-4 at 15-18.

Plaintiff did not issue a license to Defendant nor grant Defendant permission or authorization to copy, display, distribute, or otherwise use the Photograph on Defendant's

Instagram or any other website.  Dkt. Nos. 1 ¶¶ 37-38; 15-2 ¶ 21; 15-3 ¶¶ 15-16.  Sommet did not license the Photograph to Defendant directly, and Sommet gave Plaintiff permission to enforce the copyright.  Dkt. No. 15-3 ¶¶ 14-15; *see also* Dkt. No. 15-4 at 4 (listing Plaintiff under "Rights and Permissions").  Plaintiff discovered the Infringing Posts on and around October 26, 2023.  Dkt. Nos.  1 ¶ 29; 15-2 ¶ 13.  Plaintiff alleges that Defendant copied and displayed the Photograph on Defendant's Instagram as marketing and advertising material for "employees named 'Diora' and 'Liana,'" and a Story Highlight labeled 'Lip Augmentations'" to advertise Defendant's lip augmentation services.  Dkt. No. 15-2 ¶ 14; *see also* Dkt. Nos. 1 ¶ 30; 15-4 at 15-18.

Plaintiff asserts that attempts to contact Defendant to resolve the alleged infringement were made via counsel between May 2024 and June 2024.  Dkt. No. 1 ¶ 42; 15-2 ¶ 22.  Plaintiff also alleges that a representative of Defendant indicated a desire to go to court over the matter rather than work with Plaintiff.  Dkt. No. 1 ¶ 42; 15-2 ¶ 22.  Defendant initially contacted Plaintiff's attorney and spoke via phone in the weeks after the Complaint was filed, but Defendant then proceeded to ignore follow-up communications from Plaintiff's attorney.  Dkt. No. 15-2 ¶¶ 23-26.

### B.       Procedural History

Plaintiff filed the Complaint on June 30, 2025.  Dkt. No. 1.  On July 1, 2025, the undersigned scheduled a telephonic initial status conference, and directed the parties to submit a proposed Discovery Plan and Scheduling Order by August 8, 2025.  Dkt. No. 7.  Plaintiff served Defendant by serving the New York Secretary of State on or about July 16, 2025.  *See* Dkt. No. 11.  Despite initially reaching out to Plaintiff's counsel, Defendant ceased communication and did not file an answer or otherwise respond to the complaint or appear in this action.  Dkt. No. 12.

On August 11, 2025, Plaintiff requested a certificate of default against Defendant pursuant to Federal Rule of Civil Procedure 55(a).  Dkt. No. 13.  On August 13, 2025, the Court adjourned

6

the initial status conference *sine die*.  Order dated Aug. 13, 2025.  The Clerk of Court entered the certificate of default against Defendant on September 4, 2025.  Dkt. No. 14.

On September 9, 2025, Plaintiff filed the motion for default judgment against Defendant. Dkt. No. 15.  Plaintiff's motion includes: (1) a notice of motion (Dkt. No. 15); (2) a memorandum of law (Dkt. No. 15-1); (3) two declarations, one from Plaintiff's counsel and the other from Sommet (Dkt. Nos. 15-2, 15-3); (4) Exhibits A-G to Sommet's Declaration (Dkt. No. 15-4); (5) a statement of damages (Dkt. No. 15-5); and (6) a proposed order (Dkt. No. 15-6).

On September 9, 2025, Judge Block entered an order referring Plaintiff's motion to the undersigned "to hold an inquest or hearing to determine both liability and damages and then issue a report and recommendation."  Referral Order dated Sep. 9, 2025.[5]

On January 18, 2026, the Court entered an order requesting that Plaintiff supplement its motion with a letter containing Plaintiff's counsel's biographical information, "which is necessary to assess her request for attorney's fees and her hourly rate," and a certification of compliance with Local Civil Rules 55.2 and 7.1.  *See* Text Order dated Jan. 18, 2025.  On January 20, 2026, Plaintiff's attorney provided the biographical information and certification of compliance.  Dkt. No. 16.  On January 21, 2026, Plaintiff's attorney filed proof of service of the January 20, 2026 letter on Defendant by mail and e-mail.  Dkt. No. 17.

On January 25, 2026, the Court directed Plaintiff to supplement its motion for default judgment to address whether statutory damages and attorney's fees are precluded under 17 U.S.C.

---

[5] "While courts will often conduct an inquest hearing to determine the appropriate award, such a hearing is not required, and courts have awarded damages by 'rel[ying] solely on the papers provided by plaintiff.'" *Jimenez v. Green Olive, Inc.*, 744 F. Supp. 3d 221, 253 (E.D.N.Y. 2024) (quoting *Int'l Ass'n of Heat & Frost Insulators v. Affiliated Env't Servs. NJ, Inc.*, No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 5, 2017)).  Here, the undersigned respectfully recommends that the inquest hearing is not necessary because "the appropriate award can be determined based on the papers proffered by" Plaintiff. *Id.* (quoting *Int'l Ass'n of Heat & Frost Insulators*, 2017 WL 5153565, at *5).

7

§ 412.  Text Order dated Jan. 25, 2026.  On January 27, 2026, Plaintiff filed proof of service of the January 25, 2026 Order on Defendant by mail.  Dkt. No. 18.  On January 28, 2026, Plaintiff's attorney provided a response to the Court's request for case law and reasoning supporting attorney's fees and statutory damages.  Dkt. No. 19.  Plaintiff's attorney also requested permission to file a "Supplemental Declaration" to incorporate a new exhibit to Plaintiff's Motion for Default Judgment, which demonstrated that Defendant's Instagram was created in June 2022.  *Id.* at 2; Dkt. No. 19-1.  On January 29, 2026, Plaintiff filed proof of service of the January 28, 2026 letter on Defendant via mail.  Dkt. No. 20.  To date, Defendant has not responded and remains in default.

On February 20, 2026, the Court directed Plaintiff to indicate whether it intends to pursue any claims against Defendants Does 1 through 10 or whether Plaintiff will voluntarily dismiss any claims against Does 1 through 10 by February 23, 2026.  Text Order dated Feb. 20, 2026.  On February 23, 2026, Plaintiff voluntarily dismissed all claims against Does 1 through 10 pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Dkt. No. 21.

## II.    **Standard for Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sep. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (quoting Fed. R. Civ. P. 55(a)), *report and recommendation adopted*, Text Order dated Nov. 30, 2023.  "If

a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (quoting Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

### III.    Jurisdiction and Venue

The Court "must . . . satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019) (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.")).

#### A.    Service of Process

"It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him."  *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 460 (E.D.N.Y. 2022); *see also Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER), 2022 WL 18858972, at *3 (E.D.N.Y. Dec. 5, 2022) ("Ineffective service-of-process is a ground to deny a motion for default judgment" (citation omitted)), *report and recommendation adopted*, Text Order dated Dec. 22, 2022.

Rule 4(h) of the Federal Rules of Civil Procedure, which governs service on a corporation, partnership, or association, states that the entity must be served "(1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R.

9

Civ. P. 4(h)(1)(A).  Rule 4(e)(1) of the Federal Rules of Civil Procedure allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Yang v. Fei*, No. 24-CV-5055 (RA) (KHP), 2026 WL 114933, at *2 (S.D.N.Y. Jan. 15, 2026) (citing Fed. R. Civ. P. 4(e)(1)).

New York law permits service on a corporate defendant by "[p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1)(i); *see also Logan v. World Luxury Cars, Inc.*, No. 15-CV-248 (ENV) (PK), 2022 WL 2466834, at *3-4 (E.D.N.Y. Mar. 30, 2022) (recommending that such service was proper), *report and recommendation adopted*, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023).

Here, on July 16, 2025, Plaintiff properly served Defendant by serving the New York Secretary of State with the Summons in a Civil Action, Complaint and Demand for Jury Trial, Exhibits A-C of the Complaint, Notice of Option to Consent to Magistrate Judge Jurisdiction, Discovery Plan and Scheduling Order, and the undersigned's Individual Practices and Rules.  Dkt. No. 11; *see Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG) (TAM), 2024 WL 5274641, at *5 (E.D.N.Y. Dec. 5, 2024) (finding service upon the New York Secretary of State lawful under N.Y. Bus. Corp. Law § 306), *report and recommendation adopted*, Text Order dated Dec. 30, 2024.

Therefore, the undersigned respectfully recommends that service on Defendant was proper.

### B.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Title 28 U.S.C. § 1338(a) states, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."  28 U.S.C. § 1338(a); *see, e.g.*, *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 237 (S.D.N.Y. 2023) (noting, in a default judgment action, that federal subject matter jurisdiction exists over the plaintiff's "copyright infringement claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over trademark, copyright, and patent claims)").

Therefore, the undersigned respectfully recommends a finding that the Court has subject matter jurisdiction over Plaintiff's claims.

### C.    Personal Jurisdiction

The Second Circuit has held that "a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear."  *Sinoying Logistics Pte Ltd. V. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010) (citation omitted); *see also Martinez v. Golden Flow Dairy Farms Inc.,* No. 21-CV-2421 (ENV) (MMH), 2025 WL 3769328, at *3 (E.D.N.Y. Dec. 31, 2025) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]." (quoting *Sinoying Logistics Pte*, 619 F.3d at 213)), *report and recommendation adopted*, Text Order dated Feb. 11, 2026.  District Courts within this Circuit have held "[p]ersonal jurisdiction is a necessary prerequisite to entry of a default judgment." *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022) (citation omitted); *see also Ryzhov v. Malofeyev*, No. 23-CV-1072 (JMF), 2024 WL 3498391, at *1 (S.D.N.Y. July 22, 2024) (denying motion for

default judgment where personal jurisdiction was lacking). In an abundance of caution, the undersigned will analyze personal jurisdiction.

To properly exercise personal jurisdiction, three requirements must be met. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327-28 (2d Cir. 2016). First, the plaintiff's service of process upon the defendant must have been procedurally proper. *Id.* at 327 (citation omitted); *see also Sheldon v. Plot Com.*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) ("If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant"), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sep. 19, 2016) (citation omitted). Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. *Waldman*, 835 F.3d at 327 (citation omitted). Finally, the exercise of personal jurisdiction must comport with constitutional due process principles. *Id.* (citation omitted).

Plaintiff's jurisdictional allegations are "construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Wiggins v. Unilever U.S., Inc.*, 684 F. Supp. 3d 127, 137 (S.D.N.Y. July 26, 2023) (citation modified) (discussing the standard in the context of a motion to dismiss for lack of personal jurisdiction). "Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings." *Id.* (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013)).

As to the first prong, the undersigned has already respectfully recommended a finding that service on Defendant was proper in this case. Plaintiff has complied with Rule 4 by serving process on the New York Secretary of State. *Logan*, 2023 WL 156878 at *2; Dkt. No. 11.

12

As to the second prong, the available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k). *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci I*), 673 F.3d 50, 59 (2d Cir. 2012). Rule 4(k)(1)(A) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* (citing Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Id.* (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). Thus, the court should look to New York law in determining the availability of personal jurisdiction over Defendant.

"There are two types of personal jurisdiction: specific and general." *Monbo v. Nathan*, 623 F. Supp. 3d 56, 133 (E.D.N.Y. 2022) (citation omitted). "General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum." *Id.* (citation omitted). "Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim." *Id.* (citing *Waldman*, 835 F.3d at 331). Under New York law, courts exercise general jurisdiction pursuant to the New York Civil Practice Law and Rules ("CPLR") § 301, and specific jurisdiction pursuant to CPLR § 302. *Id.*

CPLR § 301 permits courts to exercise "such jurisdiction over persons, property, or status as might have been exercised heretofore." CPLR § 301. The general jurisdiction of a corporate defendant is "one in which the corporation is fairly regarded as at home." *Monbo*, 623 F. Supp. 3d at 136 (citations omitted). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of

13

business."  *Id.* at 136-37 (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020)).

Here, the Court may exercise general jurisdiction over Defendant, which is both incorporated in New York and has its principal place of business in Forest Hills, New York.  Dkt. No. 1 ¶ 6; 15-2 ¶ 3; 15-4 at 12-13.  An inquiry from the New York State Department of State website further confirms that Defendant is a "domestic business corporation" incorporated in New York, and the address to which the New York Secretary of State would mail a copy of any process against the corporation is in Forest Hills, New York.   N.Y. DEP'T OF STATE, DIV. OF CORPS., ENTITY INFORMATION, https://apps.dos.ny.gov/publicInquiry/ (last visited Feb. 23, 2026) ("ENTITY NAME: ROYAL BEAUTY STUDIO INC. DOS ID: 5506109").  Thus, personal jurisdiction is proper under CPLR § 301 because Defendant is at home in New York, its place of incorporation.  *See, e.g.*, *Stokes*, 681 F. Supp. 3d at 237 ("The Court has personal jurisdiction over Defendant under principles of general jurisdiction, being a New York Limited Liability Company with a principal place of business at . . . New York, New York." (citing CPLR § 301)); *Ghost L.L.C. v. Ghost Fitness NYC, LLC*, No. 21-CV-3557 (NCM) (MMH), 2025 WL 2487826, at *4 (E.D.N.Y. Aug. 29, 2025) ("[T]he court has general jurisdiction over [the defendant] because it is a limited liability company formed under the laws of New York." (citations omitted)), *report and recommendation adopted*, 2025 WL 2772887 (E.D.N.Y. Sep. 26, 2025).  "Since jurisdiction is proper for [this Defendant] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process."  *Ghost L.L.C.*, 2025 WL 2487826, at *4 (quoting *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sep. 7, 2018)).

14

Therefore, the undersigned respectfully recommends that this Court may exercise personal jurisdiction over Defendant.

### D.    Venue

A civil action may be brought in "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . ; or . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(2)-(3).  "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2); *see also* 28 U.S.C. § 1400(a) (copyright cases may be brought "in the district in which the defendant or his agent resides or may be found.").

Here, venue is proper in this District because Defendant is subject to the Court's personal jurisdiction and has its principal place of business in Forest Hills, New York.  Dkt. Nos. 15-4 at 12-13.

## IV.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to *all* of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v.*

*Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023)

(citation modified), *report and recommendation adopted*, Text Order dated Sep. 11, 2023.

Local Civil Rule 55.2 provides, in relevant part,

(a) In addition to following the applicable procedures in either (b) or (c) below, any party seeking a default judgment must file:

(1) an affidavit or declaration showing that:

(A) the clerk has entered default under Local Civil Rule 55.1;

(B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and

(C) the party against whom judgment is sought is not known to be a minor or an incompetent person . . . . .

(2) if proceeding by motion, the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order detailing the proposed judgment to be entered; and

(3) a certificate of service stating that all documents in support of the request for default judgment, including the "Clerk's Certificate of Default" and any papers required by this rule, have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought.

. . .

(c) By the Court (available under Fed. R. Civ. P. 55(b)(2)). In addition to the matters required in section (a), above, the party must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs.

Loc. Civ. R. 55.2.

Here, Plaintiff properly obtained the certificate of default against Defendant under Local Civil Rule 55.2(a)(1)(A). Dkt. Nos. 13, 14. Local Civil Rule 55.2(a)(1)(B) is satisfied; because Defendant is an entity and not an individual, the Servicemembers Civil Relief Act requirement does not apply. *See Loc. 1992 Pension Fund v. All Serv. Equip. Corp.*, No. 22-CV-2522 (HG)

16

(JMW), 2023 WL 11868244, at *3 (E.D.N.Y. July 28, 2023) (noting that the Servicemembers Civil Relief Act's affidavit requirement does not apply to corporate defendants), *report and recommendation adopted*, Text Order dated Aug. 18, 2023.  Further, Defendant, a corporate entity, is not a minor or an incompetent person under Local Civil Rule 55.2(a)(1)(C).

Next, Plaintiff complied with the procedural requirements set forth in Local Civil Rules 55.2(a)(2) and 7.1(a) by filing a notice of motion (Dkt. No. 15), a memorandum of law (Dkt. No. 15-1), and declarations and exhibits in support of the motion (Dkt. Nos. 15-2, 15-3, 15-4), and a proposed order (Dkt. No. 15-6).

Plaintiff has filed the certificate of service stating that all documents in support of the request for default judgment have been served on Defendant under Local Civil Rule 55.2(a)(3). Dkt. No. 15 at 3.  Local Civil Rule 55.2(b) is inapplicable because Plaintiff is seeking a default judgment by the Court under Federal Rule of Civil Procedure 55(b)(2), not a default judgment by the Clerk of Court under Federal Rule of Civil Procedure 55(b)(1).  Dkt. No. 15-1 at 6-7.  Plaintiff also filed the required statement of damages under Local Civil Rule 55.2(c).  Dkt. No. 15-5.[6]

---

[6] "[C]ourts in this District may excuse minor violations of Local [Civil] Rule 55.2 where 'the complaint and default judgment papers provide sufficient notice of the relief sought as part of the motion for default judgment, and if the noncompliance does not prejudice defendants.'" *Zaldivar v. JANL, Inc.*, No. No. 23-CV-1434 (NCM) (LGD), 2025 WL 2413850, at *5 (E.D.N.Y. Aug. 20, 2025) (citations omitted), *report and recommendation adopted*, 2025 WL 2962731 (E.D.N.Y. Oct. 21, 2025).  Plaintiff failed to include a page count certification statement, under Local Civil Rule 7.1(c), which the undersigned respectfully recommends be waived because Plaintiff's omission as not material to the relief sought.  *See Andy Ryan Photographer, LLC v. City Vista, Inc.*, No. 24-CV-3369, 2025 WL 2778372, at *5 n.3 (E.D.N.Y. Sep. 30, 2025) (excusing the non-compliance with Local Civil Rule 7.1's word count requirement), *report and recommendation adopted*, Text Order dated Oct. 20, 2025.  Further, although Plaintiff failed to include the Clerk's Certificate of Default in the certificate of service under Local Civil Rule 55.2(a)(3), Plaintiff served an attorney declaration that stated the Court entered a Certificate of Default under Local Civil Rule 55.2(a)(1)(A).  *See* Dkt. No. 15-2 ¶¶ 27, 28, 33; *see also Amador v. 109-19 Food Corp.*, No. 21-CV-4633 (EK) (VMS), 2025 WL 1032031, at *12 (E.D.N.Y. Mar. 14, 2025) (holding excusing the failure to serve the renewed entry of default judgment because the defendant had been on notice of this case and his potential liability, and nevertheless refused to participate in this action), *report and recommendation adopted*, 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025).  Finally, although the statement of damages is not "sworn or affirmed" under Local Civil Rule 55.2(c) (Dkt. No. 15-5), it is signed by Plaintiff's attorney.  *See Flycatcher Corp. Ltd. v. Affable Ave. LLC*, No. 24-CV-9429 (KPF), 2026 WL 306683, at *10 (S.D.N.Y.

Accordingly, the undersigned respectfully recommends that Plaintiff has met the jurisdictional requirements to proceed with his motion under Local Civil Rule 55.2.

## V.    **Default Judgment Factors**

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018).    The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).    The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sep. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sep. 21, 2015)).

The decision to grant or deny a motion for default judgment is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).    A court "possesses significant discretion" in granting a

---

Feb. 5, 2026) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable" or else be subject to sanctions (citing Fed. R. Civ. P. 11)).

18

motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (order adopting report and recommendation) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether a plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (citation modified), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sep. 17, 2010).  As the Second Circuit has observed, "[t]hese widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96 (citations omitted); *see also Trico Tarek Factory v. Jetax Inc.*, Nos. 24-CV-3731 (JMA) (ST), 24-CV-2409 (ST), 2025 WL 2625376, at *29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether *granting* a default judgment is warranted in the first instance." (citing *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54-61 (E.D.N.Y. 2022))), *report and recommendation adopted*, No. 24-CV-3731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sep. 30, 2025).  "Willfulness 'is the most significant factor' but is not dispositive." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (citing *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)); *see also Grp. One*, 625 F. Supp. 3d at 55 ("However, in neither case did the court find default judgment appropriate based solely on willfulness." (citations omitted)).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and

whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).

Here, as to the first factor, Defendant's failure to respond to the Complaint demonstrates the willfulness of its default. As described above, Defendant was properly served with the Complaint through the New York Secretary of State. *See* Dkt. No. 11. Notwithstanding that service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *6 (E.D.N.Y. Sep. 16, 2014) (order adopting report and recommendation) (holding that defendant's failure to appear demonstrated willfulness of default); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (order adopting report and recommendation) ("Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness." (citation omitted)). Despite initially reaching out to Plaintiff's counsel, Defendant ceased communication and did not file an answer or otherwise respond to the complaint or appear in this action, which further demonstrates Defendant's willfulness. Dkt. No. 12.

As to the second factor, the Second Circuit held that "[w]hether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *In re Orion HealthCorp*, 95 F.4th at 105. The Court cannot conclude whether Defendant has a meritorious defense to the allegations in the Complaint because Defendant did not appear in this case to proffer any defenses. *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *3 (E.D.N.Y. Jan. 3, 2019) ("[T]he Court cannot conclude there is any meritorious

20

defense to the allegations because [the defendant] did not appear nor present evidence of such a defense."), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019). This factor therefore weighs in favor of entering default judgment because the allegations in Plaintiff's Complaint are deemed admitted. *See Sola Franchise Corp.*, 2015 WL 1299259, at *6 ("Here, Defendant has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiffs' Complaint are deemed admitted."); *Krevat*, 2014 WL 4638844, at *6 ("[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." (citation omitted)).

As to the third factor, the Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery or provide greater opportunity for fraud and collusion." *Henry,* 108 F.4th at 52-53. Here, Plaintiff will suffer prejudice if its motion is denied because without the entry of default judgment, Plaintiff could be left without the ability to recover against Defendant for the claims set forth in the Complaint. *See Grp. One Ltd.*, 625 F. Supp. 3d at 60 ("Plaintiff will suffer prejudice if its motion is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint."); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 ("denying this motion would be prejudicial to [p]laintiffs 'as there are no additional steps available to secure relief in this Court'" (citation omitted)).

In sum, all three factors permit entry of a default judgment against Defendant. The Court thus turns to evaluating liability and damages.

21

## VI.    **Liability**

Plaintiff alleges a single count of willful copyright infringement pursuant to 17 U.S.C. §§ 504, 505.  *See* Dkt. Nos. 1 ¶¶ 49-52; 15-1 at 8-11; 15-5.

"Under the Copyright Act of 1976, as amended, copyright protection attaches to 'original works of authorship'—prominent among them, literary, musical, and dramatic works—'fixed in any tangible medium of expression.'"  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019) (quoting 17 U.S.C. § 102(a)).  The Copyright Act grants copyright owners the exclusive rights to reproduce the copyrighted work, "prepare derivative works based upon the copyrighted work," distribute copies of the copyrighted work to the public, and publicly perform and display the copyrighted work.  17 U.S.C. § 106(1)-(6).  A person or entity that violates a copyright owner's exclusive rights is liable for copyright infringement.  17 U.S.C. § 501; *see also Strike 3 Holdings, LLC v. Doe*, No. 18-CV-5305 (DRH) (SIL), 2020 WL 6875260, at *3 (E.D.N.Y. Nov. 12, 2020), *report and recommendation adopted*, 2021 WL 21532 (E.D.N.Y. Jan. 4, 2021).

"To prevail on a claim of copyright infringement, a plaintiff must show: '(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work.'"  *Barbera v. All Season Prot. Inc.*, No. 24-CV-6764 (VM), 2025 WL 2925056, at *2 (S.D.N.Y. Oct. 15, 2025) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003)); *see also FEMA Test Answers, LLC v. Forest Smith*,  No. 22-CV-1108 (MKB), 2024 WL 3178705, at *4 (E.D.N.Y. June 26, 2024) (describing elements of copyright infringement claim).  "Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability, . . . and a user does not have to share copyrighted works in order to infringe a copyright."  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citations omitted); *see also*

22

*Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at \*2 (E.D.N.Y. Aug. 14, 2020) ("In order to establish infringement of a copyright under the Act, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" (quoting *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019) (Newman, J., concurring in the result))).

Here, as discussed further below, Plaintiff has shown ownership of a valid copyright, *see* Dkt. Nos. 1-1 at 4-11; 15-4 at 4-5, as well as Defendant's unauthorized copying of the copyrighted work*, see* Dkt. Nos. 1-1 at 13-16; 15-4 at 15-18.

### A.    Ownership of Valid Copyright

The first element of a copyright infringement claim requires proof of Plaintiff's ownership of valid copyrights to the Photograph.  *See FEMA Test Answers, LLC*, 2024 WL 3178705, at \*4.

A certificate of registration with the United States Register of Copyrights "constitutes *prima facie* evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted."  *Fallows v. Vos Iz Neias LLC*, No. 22-CV-7964 (ARR) (LB), 2023 WL 7497080, at \*3 (E.D.N.Y. Oct. 25, 2023) (quoting *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)), *report and recommendation adopted*, 2023 WL 7522732 (E.D.N.Y. Nov. 13, 2023).  "Alternatively, a plaintiff's assertion of the existence of a valid copyright, even without producing the certificate, is satisfactory in cases of default as the allegations in a complaint are accepted as true."  *Id.*; *see also Renna v. Queens Ledger/Greenpoint Star Inc.*, No. 17-CV-3378 (DRH) (SIL), 2019 WL 1061259, at \*3 (E.D.N.Y. Feb. 13, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 1062490 (E.D.N.Y. Mar. 6, 2019).

Moreover, "[t]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses

by owners of copyrights." *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (citation omitted). Accordingly, because "[a]n exclusive license . . . conveys an ownership interest," "an exclusive licensee may sue others for infringement." *Id.* (citations omitted).

Here, Florian Sommet is the author and rights-holder to Photograph.  Dkt. Nos. 1 ¶ 16; 15-3 ¶ 6.  Sommet registered the Photograph with the United States Copyright Office under Registration Number VA 2-226-660 with an effective registration date of October 20, 2020.  Dkt. Nos. 1 ¶¶ 18-19; 15-3 ¶ 8; 15-2 ¶¶ 10-11; 15-4 at 4.  *See* Dkt. Nos. 1-1 at 4-11; 15-3 ¶¶ 6, 8-9; 15-4 at 4-5; *see also* COPYRIGHT: PUB. RECS. SYS., https://api.publicrecords.copyright.gov/search_service_external/copyrights/pdf?copyright_number=VA0002226660 (last visited Feb. 23, 2026).  On or about January 12, 2012, Sommet entered into an Artist Agreement with Agenture Folio ID GmbH for the exclusive worldwide representation to license Sommet's photographs, which includes the exclusive right to distribute, display and reproduce the Photograph.  Dkt. No. 15-3 ¶ 10.  Plaintiff subsequently acquired Agentur Folio ID GmbH, and the Artist Agreement continued between Sommet and Plaintiff.  *Id.* ¶ 12.  Plaintiff is now the exclusive licensor of Sommet's photographs, and has the exclusive right to distribute, display, and reproduce the Photograph.  *Id.*; *see also* Dkt. No. 1 ¶ 20.

These allegations, which the Court must accept as true, are sufficient to establish Plaintiff's ownership of valid copyright to the Photograph.  *See Strike 3 Holdings, LLC v. Doe*, No. 23-CV-998 (ENV) (JAM), 2024 WL 3369986, at *8 (E.D.N.Y. July 11, 2024) (finding that plaintiff established it was the owner of valid copyrights by alleging ownership and providing the copyright registration numbers), *report and recommendation adopted*, Text Order dated July 31, 2024; *Cannon v. Hist. Design, Inc.*, No. 24-CV-7662 (JHR) (GWG), 2025 WL 2599889, at *2 (S.D.N.Y. Sep. 9, 2025) (finding copyright ownership from Plaintiff's provided Certificate of Registration);

24

*Balhetchet*, 2020 WL 4738242, at *2 (stating "[p]laintiff has alleged ownership and registration of a valid copyright, but has not submitted a copy of the Certificate of Registration from the Copyright Office for the Video. The Court nevertheless accepts his allegation as true." (citation omitted)); *Renna*, 2019 WL 1061259, at *3 ("Notwithstanding Plaintiff's failure to submit registration certificates or other evidence of registration, the Court accepts this allegation as true for purposes of its liability analysis.").

Accordingly, Plaintiff has established the first element of a copyright infringement claim against Defendant.

### B.    The Unauthorized Copying of the Copyrighted Work

The second element of a copyright infringement claim requires proof that the Photograph is an "original work," and that Defendant copied the Photograph. *See Balhetchet*, 2020 WL 4738242, at *3 ("In order to establish the second element, [p]laintiff must meet a 'minimal' burden to show that the Video is his original work and allege a violation of his exclusive rights under § 106.").

A work is "original" if it "was independently created by the author (as opposed to copied from other works), and . . . it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  The "minimal degree of creativity" standard is "extremely low," and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark." *Id.*; *see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 896 (S.D.N.Y. 2016) ("The requirements for originality are 'modest.'" (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989)).  A plaintiff can establish originality based on the author's creative choices involving the "choice of timing, location, and subject matter" of the works. *Renna*, 2019 WL 1061259, at *3; *see also Pasatieri v.*

*Starline Prods.*, Inc., No. 18-CV-4688 (PKC) (VMS), 2020 WL 207352, at *2 (E.D.N.Y. Jan 14, 2020) ("The requirements for originality are modest. . . . For photographs, originality may be founded upon their subject matter, angle of photograph, lighting, determination of the precise time when the photograph is to be taken, the kind of camera, the kind of film, the kind of lens, and the area in which the pictures are taken." (citation modified)).  On a default judgment motion, the Court can also infer originality from the plaintiff's claim of authorship of the works.  *See Balhetchet*, 2020 WL 4738242, at *3 (inferring originality from allegations in complaint).

Here, Plaintiff does not provide specific details about the creative choices that went into creating the Photograph beyond statements of authorship. Dkt. Nos. 1 ¶¶ 16-19; 15-3 ¶ 6.  Given the default, however, Plaintiff's allegations are sufficient for Plaintiff to meet its "minimal burden" of showing that the Photograph possesses some "minimal degree of creativity."  *See Balhetchet*, 2020 WL 4738242, at *3 ("the originality of the Video can be inferred from Plaintiff's claim to be the author of the Video"); *Korzeniewski*, 2019 WL 312149, at *6 (holding that plaintiff established originality by alleging that he was the sole creator of the subject image, which he described as "original and unique"); *see also Simons v. Brigade USA Inc.*, No. 21-CV-5311 (RPK) (SJB), 2022 WL 4115369, at *5 (E.D.N.Y. July 27, 2022) (observing that originality "simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind") (quoting *Boisson v. Banian Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001))), *report and recommendation adopted*, Text Order dated Sep. 8, 2022.  Plaintiff has alleged that the Photograph is a product of entirely Sommet's own authorship and created as part of his work as a professional photographer. Dkt. No. 15-3 ¶¶ 2-3, 6.  Therefore, the Photograph meets the originality requirement.

26

The Complaint also sufficiently alleges that Defendant infringed the copyright to the Photograph by displaying it on Defendant's Instagram without authorization.  *See* Dkt. Nos. 1 ¶¶ 29-30, 35-38; 15-2 ¶¶ 13-21.  Plaintiff supplied screenshots of Defendant's purported Instagram webpage featuring the Photograph.  *See* Dkt. Nos. 1-1 at 13-16; 15-4 at 15-18.

These allegations, which the Court accepts as true, are sufficient to establish that Defendant copied "constituent elements" of the Photograph and, therefore, infringed Sommet's copyright to the Photograph, of which Sommet granted Plaintiff the exclusive license and permission to enforce the copyright infringement due to the Artist Agreement.  Dkt. Nos. 1 ¶ 20 15-3 ¶¶ 10, 12, 14, 15; 15-4 at 4; *see also Media, LLC v. Greenwood*, No. 17-CV-1099 (PAE) (SLC), 2019 WL 7580083, at *3 (S.D.N.Y. Dec. 17, 2019) (finding that plaintiff established defendant's liability as a matter of law where it alleged that defendant had downloaded and copied plaintiff's films without authorization), *report and recommendation adopted*, 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020).

For these reasons, Plaintiff has established that the Photograph is an original work, and that Defendant copied the Photograph in violation of the Copyright Act.  The undersigned therefore respectfully recommends that default judgment be entered in favor of Plaintiff and against Defendant with respect to liability.

## VII.    **Damages**

As Defendant's liability has been established, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158 (citation omitted).  "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty."  *Balhetchet*, 2020 WL 4738242, at *3 (citation modified).

A plaintiff may submit "documentary evidence or detailed affidavits" to support their damages claim.  *Chen*, 2023 WL 2583856, at *14.

Plaintiff seeks permanent injunctive relief pursuant to 17 U.S.C. § 502; statutory damages for the infringement pursuant to 17 U.S.C. § 504; statutory filing fees, service costs, and attorney's fees pursuant to 17 U.S.C. § 505; and post-judgment interest pursuant to 28 U.S.C. § 1961(a).  *See* Dkt. No. 15-1 at 13-22; *see also* Dkt. No. 15-5 at 1-2.  The Court addresses each request, in turn, below.

### A.    Permanent Injunctive Relief

Plaintiff seeks a permanent injunction enjoining Defendant from infringing the copyrighted Photograph.  *See* Dkt. No. 15-1 at 13-16 (Plaintiff requests the Court permanently enjoin Defendant from "further displaying or otherwise using [the Photograph] on Defendant's Instagram or any other website(s)" under the Defendant's ownership or control).

Section 502(a) of the Copyright Act provides that any court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  Thus, courts generally grant permanent injunctions where liability has been established and there is a threat of continuing infringement.  *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, No. 01-CV-750 (WDW), 2006 WL 1025915, at *2 (E.D.N.Y. Apr. 13, 2006), *aff'd*, 282 F. App'x 31 (2d Cir. 2008) ("[W]hen a copyright plaintiff has established liability, and a threat of continuing infringement, he is entitled to an injunction"); *see also Richard Feiner & Co. v. Turner Ent. Co.*, No. 96-CV-1472 (RO), 1998 WL 78180, at *2 (S.D.N.Y. Feb. 24, 1998) (noting that it is an abuse of discretion for a court to deny a permanent injunction where copyright liability has been established, and a threat of continuing infringement exists).  Further,

"[a] court may grant a permanent injunction on a motion for default judgment." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015).

"A plaintiff seeking an injunction must show: '(1) irreparable injury in the absence of an injunction, (2) the inadequacy of monetary damages alone, (3) that the balance of hardships tips in its favor, and (4) that a permanent injunction would not disserve the public interest.'" *Strike 3 Holdings*, 2020 WL 6875260, at *4 (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018)).

Here, all four factors weigh in Plaintiff's favor. First, Plaintiff has alleged that Defendant displayed the Photograph on Defendant's Instagram page. *See, e.g.*, *Korzeniewski*, 2019 WL 312149 (E.D.N.Y. Jan. 3, 2019) (finding that defendant infringed the copyright when the defendant displayed the image on a website), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019) (finding that defendant infringed copyright when displaying image on website); *Sheldon*, 2016 WL 5107072, at *12 (finding copyright infringement for unauthorized reproduction of the photograph on the defendant's website), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sep. 19, 2016).

Second, Defendant's ability to continue his infringement absent an injunction shows that monetary damages are insufficient to provide Plaintiff with relief. *See Rovio Ent., Ltd.*, 97 F. Supp. 3d at 547 (finding monetary damages insufficient to provide relief where there existed a danger that defendant might continue infringing).

Third, the balance of hardships favors Plaintiff as "it is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." *Strike 3 Holdings*, 2024 WL 3369986, at *11 (quoting *Strike 3 Holdings*, 2020 WL 6875260, at *4). Indeed, an injunction will not prejudice Defendant—it will only prohibit it from continuing to infringe the copyrighted

29

work.  *See* 17 U.S.C. § 503(b); *see also Malibu Media, LLC v. Baker*, No. 18-CV-3263 (JGK) (BCM), 2020 WL 3978302, at *7 (S.D.N.Y. June 18, 2020) ("[t]here is no hardship to Defendant because a permanent injunction will do no more than prevent Defendant from engaging in further unlawful activity"), *report and recommendation adopted*, 2020 WL 3972736 (S.D.N.Y. July 13, 2020).

Finally, "[t]he public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work."  *Malibu Media, LLC v. Doe*, No. 19-CV-3806 (DRH) (SIL), 2020 WL 8093340, at *4 (E.D.N.Y. Dec. 2, 2020) (quoting *Beastie Boys*, 87 F. Supp. 3d at 679), *report and recommendation adopted*, 2021 WL 123369 (E.D.N.Y. Jan. 13, 2021).  A permanent injunction will serve the public interest because "it will protect copyrighted material and encourage compliance with the Copyright Act."  *Strike 3 Holdings*, 2024 WL 3369986, at *11 (quoting *Baker*, 2020 WL 3978302, at *7).

Accordingly, the undersigned respectfully recommends that Plaintiff's request for a permanent injunction prohibiting Defendant and its agents from further infringement of the Photograph be granted.  The undersigned further respectfully recommends that Defendant be ordered to delete and permanently remove the Photograph from Defendant's Instagram, and cease display of the Photograph on Defendant's Instagram.  *See* 17 U.S.C. § 503(b) (authorizing courts to order the destruction of unauthorized copies of copyrighted works); *see also Strike 3 Holdings*, 2024 WL 3369986, at *11 (recommending that the court grant the request for an injunction directing destruction of unauthorized copies in defendant's possession, custody, or control); *Korzeniewski*, 2019 WL 312149, at *10 (issuing an injunction and ordering the defendant to remove infringing image from website when plaintiff only requested that defendant refrain from the usage of copyrighted image).

30

B.    **Statutory Damages and Attorney's Fees**

Plaintiff does not request any actual damages. *See* Dkt. No. 15-6; *see also* Dkt. No. 15-1 at 23. Instead, Plaintiff elects statutory damages under 17 U.S.C. § 504(c) in the amount of $10,000.00, which constitutes 1.5 to 2 times Sommet's licensing rates of approximately $5,680 to $7,464. *See* Dkt. Nos. 15-1 at 16, 19-20; 15-4 at 7, 9-10; *see also Fischer v. Forrest*, 968 F.3d 216, 220 (2d Cir. 2020) ("As noted, Fischer has elected to pursue statutory damages. A copyright infringer can be held liable for either actual damages and profits obtained or for statutory damages." (citing 17 U.S.C. § 504(a))); *Jeremiah v. DBG Media Publishers of Our Time Press Inc.*, No. 25-CV-1822 (AMD) (CLP), 2025 WL 3461162, at *6 (E.D.N.Y. Nov. 4, 2025) ("the Copyright Act, also allows plaintiffs to sue for 'statutory damages' in lieu of actual damages and profits once an act of infringement has been shown" (first citing 17 U.S.C. § 504(a)(2), (c); and then citing *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 262 (2d Cir. 2005)), *report and recommendation adopted*, 2025 WL 3461451 (E.D.N.Y. Dec. 2, 2025); *Millennium TGA, Inc. v. Leon*, No. 12-CV-1360 (MKB), 2013 WL 5719079, at *9 (E.D.N.Y. Oct. 18, 2013) ("[T]he statute and the cases in this circuit interpreting the statute have made it clear that the victim of a copyright infringement is entitled to elect damages based on the actual damages suffered, plus any additional profits, or he may elect statutory damages to be awarded within certain specified limits." (citations omitted)).

On January 25, 2026, the undersigned directed Plaintiff to submit supplemental authority on whether 17 U.S.C. § 412 ("§ 412" or "Section 412") barred statutory damages and attorneys' fee in this action. Text Order dated Jan. 25, 2026. On January 28, 2026, Plaintiff filed its letter, arguing that the plain language of Section 412 and case authority in this District support the award of statutory damages and attorney's fees. Dkt. No. 19 (first citing § 412; and then quoting *Arista*

31

*Recs. LLS v. Lime Grp. LLC*, No. 06-CV-5936 (KMW) (DF), 2010 WL 6230927, at *2 (S.D.N.Y.

Dec. 28, 2010), *report and recommendation adopted*, 2011 WL 1226277 (S.D.N.Y. Mar. 29,

2011)).  As discussed below, the undersigned respectfully recommends that § 412 does not bar

Plaintiff's recovery of statutory damages and attorney's fees.

> Section 412 provides as follows:
>
> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), *no* award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412 (emphasis added).

As an initial matter, § 412 only applies to infringement suits commenced before registration

under §§ 408(f) and 411(c).  "Before pursuing an infringement claim in court, . . . , a copyright

claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright

claim has been made." *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301 (citing 17 U.S.C. § 411(a)).

"In limited circumstances, copyright owners may file an infringement suit before undertaking

registration." *Id.*  Section 408(f) applies "[i]f a copyright owner is preparing to distribute a work

of a type vulnerable to predistribution infringement—notably, a movie or musical composition—

the owner may apply for preregistration." *Id.* (citing § 408(f)(2); 37 C.F.R. § 202.16(b)(1)).  Under

§ 411(c), "[a] copyright owner may also sue for infringement of a live broadcast before

'registration . . . has been made,' but faces dismissal of her suit if she fails to 'make registration for the work' within three months of its transmission." *Id.* (quoting § 411(c)). "Even in these exceptional scenarios, then, the copyright owner must eventually pursue registration in order to maintain a suit for infringement." *Id.* at 301-02.

Here, the copyright was registered to the Photograph on October 20, 2020 and the date of the first publication of the work in 2016. Dkt. No. 15-4 at 4. Plaintiff learned of the Infringing Posts on or about October 26, 2023. Dkt. Nos. 1 ¶ 29; 15-2 ¶ 13.[7]

Because the 2023 infringement occurred after the 2020 registration, this action does not fall within the "exceptional scenarios" under §§ 408(f) and 411(c).[8] Therefore, 17 U.S.C. § 412 does not apply. *See Arista Records*, 2010 WL 6230927, at *2 ("In particular, in enacting Section 412, Congress explained that it intended to bar 'an award of [statutory damages and attorneys' fees] where infringement takes place before registration." (citations omitted)).

Moreover, this action does not fall within § 412(1) or (2). As the Second Circuit recently summarized, "§ 412 precludes statutory damages or attorneys' fees for 'any infringement of copyright in an unpublished work commenced before the effective date of its registration or 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration." *Fischer*, 968 F.3d at 220 (quoting 17 U.S.C. § 412). In *Fischer*, the parties disputed whether § 412 barred statutory damages because the first allegedly infringing act occurred prior to the registration date of the copyright. *Id.* The Second Circuit rejected plaintiff's argument as being raised for the first time on appeal and inconsistent with the pleadings, and ruled

---

[7] Even assuming the earliest date of possible infringement was when Defendant's Instagram was created in June 2022, the analysis would be the same because the 2022 date would still be after the 2020 registration. Dkt. Nos. 19; 19-1.

[8] Further, § 412 does not apply because the 2020 registration date *is* later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, which is the 2016 publication of the Photograph. § 412.

in favor of the defendants, holding that § 412 barred statutory damages because the infringing act occurred before the registration date of the copyright. *Id.* at 221.

Here, unlike *Fischer*, this action does not fall within § 412(1) or (2). Section 412(1) does not apply because Defendant infringed the copyright in 2023 after the effective date of registration of the Photograph in 2020. Section 412(2) does not apply because the infringement of copyright in 2023 does not fall between first publication of the work in 2016 and before the effective date of registration of the Photograph in 2020, and thus, analysis need not proceed into whether such registration is made within three months after the first publication of the work. Therefore, Plaintiff may recover statutory damages and attorney's fees.

i.    **Statutory Damages**

Plaintiff elects statutory damages under 17 U.S.C. § 504(c) in the amount of $10,000, which constitutes 1.5 to 2 times Sommet's licensing rates of approximately $5,680 to $7,464. *See* Dkt. No. 15-1 at 20.

Courts in this Circuit consider the following factors in determining the amount of statutory damages.

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Andy Ryan Photographer, LLC v. City Vista, Inc.*, No. 24-CV-3369 (OEM) (JAM), 2025 WL 2778372, at *13 (E.D.N.Y. Sep. 30, 2025) (quoting *Myeress v. Elite Travel Group USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14, 2018), *report and recommendation adopted*, Text Order dated October 20, 2025.

In light of Defendant's default, it is impossible to ascertain factors two and five. *See id.* ("Here, '[i]n light of Defendant's default, it is impossible for the Court to ascertain what, if any profits Defendant earned by infringing (factor two) or the value of the infringing material (factor five).'" (quoting *Strike 3 Holdings*, 2020 WL 6875260, at *3). Because Plaintiff elected statutory damages and not actual damages, there's no information as to lost revenue under factor three. Dkt. No. 15-1 at 17-20. Nonetheless, based on the evidence submitted in the default judgment motion, the undersigned can evaluate the infringer's state of mind (factor one), the deterrent effect of damages on Defendant (factor four), and the conduct and attitude of the parties (factor six).

Regarding factors one and six, the Court can draw an inference that Defendant willfully infringed upon the copyright from Defendant's default. Dkt. No. 1 ¶¶ 29-43; *see also Andy Ryan Photographer*, 2025 WL 2778372, at *14 (inferring from defendant's default that it willfully infringed upon plaintiff's copyright (first citing *Strike 3 Holdings LLC*, 2020 WL 6875260, at *3 ("[B]ased on [d]efendant's default, the Court may infer that his infringement was willful."); and then citing *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) ("Courts frequently infer willfulness where a defendant defaults."))). For factor four, "the need to deter is great in cases where infringers, like [d]efendant, through the use of internet downloads, work with others to infringe copyrights," such as in *Andy Ryan Photographer, LLC*, where the defendant copied and displayed Plaintiff's copyrighted photograph on the defendant's website. *See Andy Ryan Photographer*, 2025 WL 2778372, at *14 (quoting *Strike 3 Holdings*, 2020 WL 6875260, at *3). Thus, Plaintiff has met factors one, four, and six, which are sufficient to support an award of statutory damages. *Id.* (citing *Malibu Media, LLC v. Doe*, No. 19-CV-3806 (DRH) (SIL), 2020 WL 8093340, at *3 (E.D.N.Y. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 123369 (E.D.N.Y. Jan. 13, 2021)).

Statutory damages under the Copyright Act are designed to "discourage wrongful conduct," as well as to provide "reparation for injury." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 197 (S.D.N.Y. 2016) (citations omitted). It follows that "'a statutory damage award should significantly exceed the amount of unpaid license fees,' so as to put 'infringers on notice that it costs less to obey the copyright laws than to violate them.'" *Id.* (citing *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996)). Accordingly, "where there is evidence of willfulness, courts often impose statutory damages that are more than double the sum of the unpaid licensing fees." *Id.* (citing *Broad. Music, Inc. v. Pamdh*, *Enters, Inc.*, No. 13-CV-2255 (KMW), 2014 WL 2781846, at *3 (S.D.N.Y. June 19, 2014)). Courts have held a "five-times multiplier for deterrence effect is proper in cases of willful infringement." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019).

Here, Plaintiff has successfully pled willfulness in the Complaint, which can be inferred at this juncture. Dkt. No. 1 ¶¶ 29-43; *Strike 3 Holdings*, 2020 WL 6875260, at *3 ("[B]ased on [d]efendant's default, the Court may infer that his infringement was willful." (citing *Hounddog Prods., L.L.C.*, 826 F. Supp. 2d at 631)).[9] Plaintiff has provided invoices for licenses granted for online use of similar photographs by Sommet for approximately $5,680 and $7,464. Dkt. No. 15-4 at 7, 9-10. Plaintiff asserts that "these previous licenses are comparable for the license that would have been granted had the Defendant properly licensed [the Photograph] from Plaintiff." Dkt. No. 15-2 at 19. The $10,000 statutory damages that Plaintiff seeks represents a modest 1.5 to two times Sommet's licensing rates. Dkt. No. 15-1 at 20. This amount is reasonable. *See, e.g.*, *Broad. Music, Inc.*, 158 F. Supp. 3d at 199 ("[W]here there is evidence of willfulness, courts often impose

---

[9] Plaintiff has submitted further evidence of Defendant's willfulness because Plaintiff sent, through assistance of a copyright enforcer and counsel, a cease-and-desist notice to Defendant for past and ongoing infringement, and although Defendant initially responded, it later stopped responding. Dkt. Nos. 15-1 at 18-19; 15-2 ¶¶ 22-26.

statutory damages that are more than double the sum of the unpaid licensing fees." (citation omitted)).  Therefore, the undersigned respectfully recommends that Plaintiff be awarded statutory damages in the amount of $10,000.

### ii.    Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $2,323.75 based on 7.15 hours of work by its attorney, Taryn R. Murray, at an hourly rate of $325.  Dkt. No. 15-2 ¶ 40.  Plaintiff's counsel includes a timesheet detailing 7.15 hours worked in support of this application.  *See* Dkt. No. 15-4 at 24.

The Copyright Act also provides that a prevailing party may recover attorney's fees.  *See* 17 U.S.C. § 505 ("[T]he court may . . . award a reasonable attorney's fee to the prevailing party").  A fee award is not guaranteed but instead "lies within the sole and rather broad discretion of the [c]ourt."  *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

"Determining the reasonable hourly rate begins by applying the 'forum rule,' which requires courts to generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 239 (E.D.N.Y. 2025) (Block, J.) (citation modified).  Adjusted for inflation and market conditions, the Court has found recent forum rates in this District "to now be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals."  *Id.* at 244.

37

Here, Plaintiff's counsel requests $2,323.75 in attorney's fees for 7.15 hours incurred at a rate of $325 per hour. Dkt. No. 15-2 ¶ 41. Ms. Murray, an associate, was first licensed as an attorney in November 2018 and has been practicing copyright law since January 2019. Dkt. No. 16. Plaintiff has approximately seven years of practice in the intellectual property field. *Id.* The requested hourly rate is reasonable. *See, e.g.*, *Rubin*, 763 F. Supp. 3d at 244-45 (awarding an hourly rate of $350 to a senior associate with seven or eight years of practice as an attorney and three or four years of practice in the relevant field). The requested hours are similarly reasonable. *See, e.g.*, *Andy Ryan Photographer, LLC*, 2025 WL 27783272, at *17 (finding 8.6 hours expended reasonable on a default judgment motion involving copyright infringement due to the unauthorized use of the plaintiff's photographs). Therefore, the undersigned respectfully recommends awarding $2,323.75 in attorney's fees.

### iii.    Costs

Plaintiff requests an award of costs in the amount of $943.80, comprised of $402.00 in filing fees and $541.80 for service of process. *See* Dkt. Nos. 15-2 ¶ 41; 15-5 at 1. Plaintiff's request is supported by the process server's invoice, counsel's proof of payment of the filing fee and process server's invoice, and Plaintiff's attorney's affirmation of the costs incurred. *See* Dkt. Nos. 15-2 ¶ 41; 15-4 at 20-23.

In any civil action under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. Plaintiff is entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Restrepo v. Dynamic Fire, Inc.,* No. 25-CV-02079 (NCM) (JAM), 2026 WL 363526, at *16 (E.D.N.Y. Feb. 10, 2026) (order adopting report and recommendation) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)

38

(citation modified)).  Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable.  *Id.* (first quoting *Moon v. Gab Kwon*, No. 99-CV-11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002); and then quoting *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987))).  To recover these costs, Plaintiff must "submit adequate documentary evidence in support." *Id.* (quoting *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015) (order adopting report and recommendation)).  "Costs related to filing fees, process servers, postage and photocopying are ordinarily recoverable." *Id.* (quoting *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)).

Plaintiff's request to recover the filing fee, which is actually $405, is supported by documentation and verified by the docket.  *See, e.g.*, *Dunston v. Babushka LLC*, No. 24-CV-2969 (OEM) (JAM), 2025 WL 2980857, at *5 n.3 (E.D.N.Y. Oct. 22, 2025) (awarding $405 in costs for the filing fee even though the plaintiff's billing statement states $402 in a default judgment motion because the docket confirms this payment), *report and recommendation adopted*, Text Order dated Nov. 12, 2025; *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket); *see also* Dkt. No. 1 (confirming Plaintiff paid the $405 filing fee for the Complaint); Dkt. No. 15-4 at 20 (indicating that the $405 filing fee was paid). Furthermore, the cost of $541.80 for service of process is likewise reasonable.  *Restrepo*, 2026 WL 363526, at *16.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded costs of $946.80.  *See Mendez v. Sam Nat. Deli Corp.*, No. 25-CV-1692 (BMC), 2025 WL 3089308, at *2

(E.D.N.Y. Nov. 5, 2025) (approving $1,021 in costs, consisting of the filing fee and service of process fees).

### C.    Post-judgment Interest[10]

Finally, Plaintiff seeks, and is entitled to, post-judgment interest as of right. *See* Dkt. No. 15-5; *see also* 28 U.S.C. § 1961. "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see also Strike 3 Holdings*, 2024 WL 3369986, at *14 (recommending award of post-judgment interest); *Malibu Media*, 2020 WL 8093340, at *5 (awarding post-judgment interest in a copyright infringement case).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest at the current legal rate allowed and accruing under 28 U.S.C. § 1961(a), from the date of the entry of judgment in this case until Defendant has satisfied the judgment.

## VIII.  Conclusion

Accordingly, the undersigned respectfully recommends that Plaintiff's motion be granted, to wit, Defendant and its agents be permanently enjoined from further copyright infringement of the Photograph; $10,000 for statutory damages under 17 U.S.C. § 504(c); $2,323.75 for attorney's fees; $946.80 in costs; and post-judgment interest at the current legal rate allowed and accruing under 28 U.S.C. § 1961(a), from the date of the entry of judgment in this case until Defendant has satisfied the judgment.

---

[10] Although initially requested as a relief in the Complaint (Dkt. No. 1 at 9), Plaintiff does not request pre-judgment interest in connection with the motion for default judgment. *See* Dkt. No. 15-6; *see also* Dkt. No. 15-1 at 23.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by e-mail and overnight mail and first-class mail to Defendant at the below addresses and file proof of service by February 25, 2026:

Royal Beauty Studio Inc.,
c/o Harpreet Kaur
102-35 65th Road,
Forest Hills, NY 11375

Royal Beauty Studio Inc.,
107-29 71st Avenue
Forest Hills, NY 11375

E-mails: Dinabieva@yahoo.com; lagrandestudio71@gmail.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Block. The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)). Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)). Accordingly, the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff failed to object to

41

the magistrate judge's report and recommendation pertaining to the claim on which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated:        Brooklyn, New York
              February 23, 2026            **SO ORDERED**

                                            /s/ Joseph A. Marutollo
                                           JOSEPH A. MARUTOLLO
                                           United States Magistrate Judge